UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS T. WALKER,

      Petitioner,          Case No. 23-cv-11782

  v.                    Honorable George Caram Steeh

CATHERINE BAUMAN,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Marcus T. Walker, "petitioner," filed a *pro se* habeas corpus petition challenging his state convictions for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b); armed robbery, Mich. Comp. Laws § 750.529, conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a; § 750.529; and knowingly circumventing or interfering with the signal, impulse, or data transmitted by an electronic monitoring device (tampering with a tether), Mich. Comp. Laws § 771.3f(1).

Petitioner raises a claim that the prosecutor withheld exculpatory evidence and that trial counsel was ineffective for failing to investigate and discover this evidence. The State argues in the answer to the petition that

- 1 -

petitioner's first claim is procedurally defaulted and that the state courts reasonably rejected both of petitioner's claims. For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Washtenaw County Circuit Court, in which he was jointly tried with his co-defendant Rico Chandler.[1] This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> In the early morning hours on June 8, 2018,[2] a shooting occurred at an apartment complex in Ypsilanti, Michigan. Video cameras at the complex recorded the entire event and showed that Chandler and Walker drove separately to the complex. Upon their arrival, they walked to an apartment with several other individuals. The evidence established that Walker had arranged for Lee to drive to the complex to sell drugs to Chandler, but that Walker knew that Chandler intended to rob Lee. Walker admitted that he spoke with Lee and instructed him to park in a specific space. The video evidence showed that upon Lee's arrival, Chandler walked up to Lee's vehicle and shot Lee once in the head. Lee died instantly.
>
> After the shooting, Lee's vehicle began to roll forward, jumped the curb, and then came to rest after it struck a porch. The video evidence showed Chandler following the rolling vehicle and

---

[1] Petitioner was acquitted of the charge of first-degree premeditated murder.

[2] The opinion inaccurately states the date of the murder. The correct date is June 8, 2017. (See ECF No. 11-15, PageID.728-29).

> reaching into the driver's side of the vehicle before eventually moving to the passenger side, breaking the passenger's window, and also reaching inside the vehicle from that side. Chandler then walked to a location behind an apartment where the video evidence showed that Walker had been waiting. The two interacted briefly before Chandler disappeared. Walker then proceeded to Chandler's car and drove it away. Evidence showed that both Walker and Chandler arrived shortly thereafter at the home of Chandler's then girlfriend, Teneca Powell. Chandler gave Powell a bloody handgun and a bag of cocaine and told her to hide them.

*People v. Walker*, No. 351789, 2021 WL 8442980, at *1–2 (Mich. Ct.

App. Dec. 17, 2021)(internal footnote omitted); *lv. den*. 509 Mich.

977, 973 N.W.2d 132 (2022).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. *Brady* violation based on the prosecutor's suppression of a witness' incarceration records and

II. Ineffective assistance of trial counsel for failure to investigate the *Brady* violation.

## II.  Standard of review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

- 3 -

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain habeas relief, a state prisoner must show that the state court's rejection of his claim "was so

- 4 -

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

The Court discusses the two claims together because they are interrelated.

Petitioner in his first claim alleges that the prosecutor deprived petitioner of a fair trial when he failed to disclose that a prosecution witness, Dorian Diaz, was incarcerated in the Michigan prison system at the time that Diaz claimed to have overheard petitioner and Chandler discuss their plan to rob and kill Lee. In his second claim, petitioner argues that trial counsel was ineffective for failing to do a better job of investigating whether Diaz was incarcerated at the time that he allegedly overheard these remarks between petitioner and his co-defendant.

Respondent urges this Court deny petitioner's first claim on the ground that it is procedurally defaulted because petitioner failed to object at trial and the Michigan Court of Appeals relied in part on his failure to object to deny the claim.

Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal

courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Although petitioner did not object to the *Brady* issue at the trial level, his appellate counsel did file with the Michigan Court of Appeals a motion to remand the issue to the trial court in order to preserve it. Because some attempts were made to preserve this issue, the Court feels it would be better to address the merits of this claim rather than procedurally default the claim.

To prevail on his first claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S.

667, 683 (1985).  In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the

Supreme Court articulated three components or essential elements of a

*Brady* claim: (1) the evidence at issue must be favorable to the accused,

either because it is exculpatory, or because it is impeaching; (2) the

evidence must have been suppressed by the State, either willfully or

inadvertently; and (3) prejudice must have ensued.  "Prejudice (or

materiality) in the *Brady* context is a difficult test to meet." *Jamison v.*

*Collins*, 291 F.3d 380, 388 (6th Cir. 2002). A habeas petitioner bears the

burden of showing the prosecution suppressed exculpatory evidence. *See*

*Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012).

Petitioner is not entitled to relief on his *Brady* claim for several

reasons.

First, the Michigan Court of Appeals ruled that the prosecutor had no

duty to discover any information about Diaz that was in the possession of

the Michigan Department of Corrections (M.D.O.C.) because the M.D.O.C.

was not involved in petitioner's prosecution or the criminal investigation of

his case. *People v. Walker*, 2021 WL 8442980, at *3.  The Michigan Court

of Appeals further concluded that the M.D.O.C.'s knowledge that Diaz was

still incarcerated in their system could not be imputed to the prosecution. *Id.*

In so ruling, the Michigan Court of Appeals held that the Michigan

Legislature, in establishing the Department of Corrections "did not charge the Department with the general obligation to investigate crimes or assist the prosecution in particular cases." *Id.*

The holding in *Brady* does not apply to information that is not wholly within the control of the prosecution. *See Owens v. Guida*, 549 F.3d 399 (6th Cir. 2008)(quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).  In addition, "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). The Sixth Circuit has rejected a *Brady* claim based on evidence possessed by an uninvolved government agency. *See Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010)(state prosecutor had no duty to investigate the unrelated federal prosecution of a witness). The Sixth Circuit has noted that "*Brady* and its prodigy do not "impos[e] a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *Id.* (quoting *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996)).

In the present case, the Michigan Court of Appeals reasonably concluded that the Washtenaw County Prosecutor had no obligation to ascertain whether or not Diaz was still incarcerated with the Michigan

- 8 -

Department of Corrections, because the M.D.O.C. is a separate state governmental agency which had no involvement with petitioner's prosecution. *See Young v. Grace*, 525 F. App'x 153, 160 (3d Cir. 2013)(State court's determination that *Brady* did not require the prosecution to disclose prison records that defendant could have used to impeach witness's testimony, because prosecution did not possess them and the prison was not a law enforcement agency or otherwise involved in the prosecution, was not contrary to clearly established federal law as determined by the Supreme Court of the United States, as required to grant federal habeas relief); *see also United States v. Pembrook*, 876 F.3d 812, 826 (6th Cir. 2017)(*Brady* did not require federal prosecutors to review informant witness's state prison records that were not in the prosecutor's possession); *judgment vacated on other grounds*, 138 S. Ct. 2676 (2018).

Secondly, Petitioner failed to show that evidence that Mr. Diaz had been incarcerated at the time he claimed to have overheard the conversation between petitioner and his co-defendant was material to the conviction for two reasons.

First, as the Michigan Court of Appeals noted:

The jury understood that Diaz's testimony had credibility issues. Diaz admitted that he had had only limited contact with Walker since high school, that he never graduated from high school and did not recall when he left school, that he was involved with drugs

and guns, and that he had a motive to frame his recollections to conform to the prosecution's theory of the case in the hope that he might get his own sentence reduced. Diaz was also vague and inconsistent about both the timing of the conversation that he purportedly overheard, and about whether Walker was the other participant to the conversation with Chandler.

*People v. Walker*, 2021 WL 8442980, at *4.

The prosecutor's alleged failure to provide petitioner with Diaz's prison record did not prejudice petitioner under *Brady* because it was cumulative of the other evidence that had been introduced at trial to impeach Mr. Diaz's credibility. *See Brooks v. Tennessee*, 626 F.3d 878, 892-94 (6th Cir. 2010).

Secondly, the evidence concerning Diaz's incarceration was not material in light of the overwhelming evidence of petitioner's involvement in the murder and robbery:

Walker made multiple statements to two detectives. He stated that he ran into Lee earlier in the day before the night of the shooting and learned that Lee wanted to sell cocaine. He also admitted that he spoke with Chandler that same day and told Chandler about Lee. Chandler responded that he would be hanging out at the apartment complex at issue, and Walker agreed to talk with Chandler later—presumably about Lee. Walker later arranged the meeting between Chandler and Lee even though he knew that Chandler intended to rob Lee. In fact, Walker told Detective Michael Babycz that he knew that Chandler intended to "get his ass"—referring to Lee—if he got the opportunity, which suggested that Walker knew that Chandler intended to do more than just rob Lee. Walker also knew that Chandler always carried a handgun. Walker described Chandler as a dangerous guy who intended to rob Lee, and he

admitted that he used foil to defeat his tether's tracking capabilities. Detective Annette Coppock stated that Walker also told her that Chandler told him, "If I can get down on him, I'm gonna get that ass," which again suggested that Walker knew that Chandler intended to shoot Lee.

The video evidence showed that Walker arrived at the apartment complex at about the same time as Chandler and that he and his companion walked toward an apartment a short distance behind Chandler and his group. Walker admitted that he went into an apartment where Chandler was present. Phone records showed that Walker was repeatedly communicating with Lee at that time, and Walker told detectives that he directed Lee to the complex and identified the place where he should park. Video evidence also showed Lee moving his car throughout the parking lot during the relevant times, which permitted an inference that Lee was acting on Walker's instructions.

The video evidence further depicted Chandler meeting with Walker before the shooting and immediately after the shooting. The video then showed Walker driving Chandler's car from the complex, and Walker admitted that he drove to an area near Powell's residence. Powell testified that a man was with Chandler when Chandler woke her and handed her a bloody gun and cocaine. That man, she related, poked his head in the room and told Chandler that he needed to get going because his tether was going off. From that, the jury could infer that Walker was with Chandler and picked up Chandler in Chandler's car and drove him to Powell's home. That evidence allowed the jury to infer that Walker and Chandler coordinated their activities both before and after the shooting, and suggested that Walker had to have known that Chandler robbed and killed Lee.

Taken together, the evidence of Walker's guilt was overwhelming. The evidence showed that, despite knowing that Lee was armed and intended to rob Lee or otherwise "get his ass," Walker arranged for Lee to meet Chandler at the apartment complex, called Lee and directed him to the point where Chandler eventually ambushed him, waited in a particular location during the shooting and robbery, met with Chandler

immediately after the shooting, and then assisted Chandler with his escape from the area. Given the totality of the evidence, even if Walker's lawyer had impeached Diaz with the evidence that Diaz could not possibly have overheard a conversation between Chandler and Walker, that impeachment would not have altered the outcome. Consequently, Walker fails to demonstrate plain error that warrants a new trial.

Indeed, the evidence was so strong that, even if Walker had not forfeited this claim of error, it still would not warrant relief. Diaz's unimpeached testimony was the strongest evidence that Walker agreed to kill Lee, but the jury clearly rejected the contention that Walker premeditated Lee's murder. The jury could only have reached that conclusion if it discounted Diaz's credibility even without the additional impeachment. When the evidence of premeditation is discounted, Diaz's testimony only served to bolster the other evidence that Walker knowingly assisted Chandler with his plan to rob Lee. On this record, there is no reasonable probability that, had Walker been able to further impeach Diaz, the result of the proceeding would have been different. Because the failure to disclose the impeachment evidence did not render the verdict unworthy of confidence, the impeachment evidence was not material and would not warrant a new trial.

*People v. Walker*, 2021 WL 8442980, at 4-5 (internal citations omitted).

Evidence that impeaches a witness "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, 565 U.S. 73, 76 (2012)(citing *United States v. Agurs*, 427 U.S. 97, 112–113, and n. 21 (1976)).  Impeachment evidence may be considered to be material where the witness in question supplies the only evidence linking the defendant to the crime or the only evidence of an essential element of the offense. *See United States v. Avellino*, 136 F.3d 249, 256

(2nd Cir. 1998); *Lyon v. Senkowski*, 109 F. Supp. 2d 125, 139 (W.D.N.Y. 2000). The Sixth Circuit has noted that: "[C]onsiderable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness." *Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009)(internal citations omitted).

In light of the overwhelming evidence of petitioner's guilt, evidence that  Diaz could not have overheard the conversation between petitioner and his co-defendant because he was incarcerated at the time was not material to petitioner's conviction. Petitioner is not entitled to habeas relief on this claim.

To the extent that petitioner claims that Mr. Diaz committed perjury at his trial, he would not be entitled to habeas relief.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known

to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

Petitioner is not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that Mr. Diaz testified falsely that he overheard the conversation between petitioner and his co-defendant. *See Rosencrantz v. Lafler,* 568 F.3d 577, 587 (6th Cir. 2009).

To prevail on his related ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding this claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

The Sixth Circuit has observed that "it is well settled that 'the test for prejudice under *Brady* and *Strickland* is the same.'" *Montgomery v. Bobby*, 654 F.3d 668, 680, n. 4 (6th Cir. 2011); *see also Hutchison v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).  Any error by trial counsel in failing to discover that Diaz was still incarcerated with the M.D.O.C. at the time he

- 14 -

claimed to have overheard the conversation between petitioner and his co-defendant "was not prejudicial for the same reasons that this evidence was not material for *Brady* purposes." *Hutchison,* 303 F.3d at 749. Petitioner is not entitled to relief on his second claim.

## IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

According, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.  It is further ORDERED that a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.

s/George Caram Steeh
HON. GEORGE CARAM STEEH
U. S. DISTRICT COURT JUDGE

Dated:  September 12, 2024

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 12, 2024, by electronic and/or ordinary mail and also on Marcus T. Walker #784654, Kinross Correctional Facility, 4533 W. Industrial Park Drive, Kincheloe, MI 49786.

s/LaShawn Saulsberry
Deputy Clerk